UNITED STATES, Appellee

v

CHARLES F. ROBINSON, Specialist Four,
U. S. Army, Appellant

13 USCMA 674, 33 CMR 206

No. 16,491

April 26, 1963

Captain Daniel H. Benson argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel Ralph Herrod, Captain Charles W. Schiesser, and Captain Thomas Stapleton.

Captain Peter J. McGinn argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel Francis M. Cooper.

## Opinion of the Court

KILDAY, Judge:

The appellant stands convicted, on his purported plea of guilty, of larceny, conspiracy, wrongful sale of Government property and unlawfully receiving Government property, in violation of Articles 121, 81, 108 and 134, Uniform Code of Military Justice, respectively, 10 USC §§ 921, 881, 908 and 934. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances and confinement at hard labor for one year. The convening authority approved the sentence. A board of review in the office of The Judge Advocate General of the Army affirmed the findings of guilty and the sentence.

This Court granted review on the following assigned issue:

Whether the arraignment of the accused took place in an out-of-court hearing, and his plea of guilty was entered and accepted in said out-of-court hearing, rather than before the court members.

The proceedings which give rise to the question before us were of an admittedly unusual nature. By the record it is made to appear that the court-martial to which this case was

**675**

referred for trial was scheduled to assemble on the afternoon the trial began. At an earlier hour than that set for the assembly of the court, the lieutenant colonel who had been appointed as law officer, the lieutenant appointed as trial counsel, the lieutenant appointed as defense counsel, the individual civilian defense counsel, the appellant, and the reporter met in a "preliminary hearing" called in the absence of "any and all members of the court."

In the course of his statement as to the purpose of the meeting, the lieutenant colonel made the following statements:

". . . The purpose of this preliminary hearing is to properly expedite the general court-martial trial of the accused. . . . The accused is advised at this time that this preliminary hearing has been called at the instance of the trial counsel inasmuch as the members of the court have been advised to be here at a later time this afternoon. . . . By holding this hearing before the convening of the court, we will perhaps be able to complete this case today, which is desirable, inasmuch as the law officer has come from a great distance and it would be inconvenient to several persons if we waited for the court to convene before holding an out of court hearing. . . . Does the trial counsel desire to go through some of the preliminaries now. We have accounted for those present, and I believe that the next in order would be to give introductory remarks and then swear the reporter."

Thereupon trial counsel announced "The court will be convened" and made reference to the appointing orders of the court-martial. In the continued absence of all of the members of the court-martial, proceedings were had in the manner provided by paragraph 61, Manual for Courts-Martial, United States, 1951, for the preliminary organization of the court, through paragraph 61g. The reporter having been previously sworn, the "law officer" was sworn and thereafter the trial counsel, defense counsel, and individual defense counsel were sworn. The "law officer" then stated:

"The parties are now qualified to act in this court-martial despite the absence of the members of the court. This proceeding will constitute a portion of the trial and a verbatim transcript of this proceeding will be incorporated in the record of trial at an appropriate point when I declare it during the trial."

The "law officer" further stated that a preliminary hearing prior to the assembly of the members of the court was an unusual procedure and that he did not feel it appropriate to proceed unless the appellant specifically consented to proceeding in the out-of-court hearing. Upon inquiry from the "law officer," the appellant signified his consent, as did defense counsel and individual civilian defense counsel.

Trial counsel then proceeded to state by whom the charges were preferred, by whom forwarded, and by whom investigated. Trial counsel then announced that the law officer would not be a witness for the prosecution, indicated the records disclosed no grounds for challenge, and advised that if the law officer knew of any facts which he felt might be grounds for challenge he should so state. The "law officer" then disclosed that he had sat as law officer on three cases of other soldiers charged in companion cases, but asserted he would not be influenced thereby. It was stated that there was no challenge of the law officer.

Reading of the charges was waived. The defense made motions for appropriate relief and the law officer ruled upon them. Through counsel, the defendant entered a plea of guilty to all specifications and charges. The "law officer" explained to appellant the consequences of his plea, examined into the providence thereof, explained each specification, and secured appellant's acknowledgment that each allegation was true or that the facts alleged existed. A pretrial agreement was presented and read to appellant, who agreed to its terms. Appellant re-

affirmed that he still wished to plead guilty and the "law officer" stated:

"All right, I will announce to the court that your plea of guilty has been accepted and will be a matter of record."

Shortly thereafter the out-of-court hearing terminated.

It may be noted that the "out-of-court preliminary hearing" continued for one hour and eight minutes and consumes eighteen pages of the record prior to findings. The hearing before the full court, to be hereafter developed, continued for a period of thirty minutes and consists of only five pages of proceedings prior to the time the members retired to deliberate on findings.

Very shortly after the termination of the preliminary hearing, the record indicates that the trial before the court began. Trial counsel announced that the prosecution was ready to proceed and also stated that at the "preliminary hearing" the competency and qualifications of counsel were inquired into and satisfied. Trial counsel also announced that at such preliminary hearing counsel and the law officer were sworn. Inquiry was made as to enlisted men on the court, and the members of the court were then sworn. It should be noted that the law officer, trial counsel, defense counsel, individual defense counsel, and the reporter were never sworn after the assembly of the court. The only oath by any of them was at the "preliminary out-of-court hearing."

The nature of the charges was stated by trial counsel, copies of the charges and specifications were distributed to the court members, *voir dire* conducted, and a member of the court peremptorily challenged by the appellant.

Proceedings at that juncture, before the court-martial, are important to our inquiry. The accused was not arraigned before the full court. He entered no plea before the full court, nor was he called upon to do so. However, the law officer informed the court-martial of the proceedings at the pretrial hearing and stated in connection therewith:

". . . Also, the accused was arraigned upon the charges, a copy of which you have before you. He pleaded guilty to the charges and specifications and I now announce that his plea of guilty is accepted, by the court, and is now entered of record in the case."

Thereupon trial counsel stated that in view of the appellant's plea of guilty he had no evidence to present, and the defense also rested. There was no argument on findings, and the law officer instructed the court-martial that appellant's pleas justified his conviction, and that the appropriate findings should read as appeared in a designated part of the work sheet which read: "Of all specifications and charges, guilty." The court was closed and, when opened, the court-martial returned its findings of guilty. There followed an extended hearing on sentence. Our granted issue has to do with what transpired prior to findings.

Initially, we call attention to the language of paragraphs 61*h* and 61*i*, Manual for Courts-Martial, United States, 1951, which reads as follows:

"*h*. **Administration of oaths.**—The accused, a quorum of the court, properly qualified counsel, and, in a general court-martial, the law officer, being present, the members of the court and the law officer will be sworn by the trial counsel; thereafter, the president of the court will swear the members of the prosecution and the defense, including any individual counsel (civilian or military). All personnel, including the law officer, counsel, the accused, the reporter, and the interpreter, if any, will stand while the oaths are being administered.

"*i*. **Convening of court.**—After the oaths have been administered, the convening of the court is complete."

The court being thus organized, paragraph 65*a* of the Manual provides that trial counsel will distribute copies of the charges and specifications, read

**677**

the charges and specifications,[1] and call upon the accused to plead thereto; that this proceeding constitutes the arraignment; and that the pleas are not part of the arraignment.

We hold that the above portions of the Manual state valid principles. They are not contrary to ▮▮▮▮▮ ▮ or inconsistent with the Uniform Code of Military Justice. United States v Smith, 13 USCMA 105, 32 ·CMR 105; Article 36 of the Uniform Code, 10 USC § 836. We further hold such language to be consonant with the context and the clear intention of the Code. Nowhere in the Code is there anything which could be construed as constituting the law officer as a court independent of the corporate body of the court-martial. Nor is there anything therein which authorizes the law officer—independently of the court-martial members and prior to their assuming the oath as such—to perform any of the functions of the court. To the contrary, Article 16(1), Uniform Code of Military Justice, 10 USC § 816, makes it abundantly clear that a properly constituted general court-martial requires both a law officer and "not less than five members." Manifestly, the law officer cannot take the place of such requisite members.

In McClaughry v Deming, 186 US 49, 46 L ed 1049, 22 S Ct 786 (1902), Mr. Justice Peckham said:

". . . A court-martial is the creature of statute, and, as a body or tribunal, it must be convened and constituted in entire conformity with the provisions of the statute, or else it is without jurisdiction."

We quote from Runkle v United States, 122 US 543, 30 L ed 1167, 7 S Ct 1141 (1887):

"A court martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. When the object of its creation has been accom-

plished it is dissolved. . . . To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had been complied with, and that its sentence was conformable to law."

See also Dynes v Hoover, 20 Howard 65 (US 1858); United States v Brown, 206 US 240, 51 L ed 1046, 27 S Ct 620 (1907); United States v Vanderpool, 4 USCMA 561, 16 CMR 135.

As we have noted, there is no authority under the Code for a law officer to proceed, individually ▮▮▮▮▮ ▮ and prior to the swearing of the members of the court, on any matter required of the court-martial. No action or lack of action by an accused can give jurisdiction therefor nor constitute a waiver of the procedure ordained by statute. As stated in McClaughry v Deming, supra, at 186 US 66:

"But it is said defendant did not object to being tried by this illegally constituted court, and that his consent waived the question of invalidity. We are not of that opinion. It was not a mere consent to waive some statutory provision in his favor which, if waived, permitted the court to proceed. His consent could no more give jurisdiction to the court, either over the subject-matter or over his person, than if it had been composed of a like number of civilians or of women. The fundamental difficulty lies in the fact that the court was constituted in direct violation of the statute, and no consent could confer jurisdiction over the person of the defendant or over the subject-matter of the accusation, because to take such jurisdiction would constitute a plain violation of law. His consent had no effect whatever in the face of the statute which prevented such men sitting on the court."

The context of the Uniform Code of

---

[1] It is to be noted that the paragraph also provides that the accused may waive the reading of the charges and specifications.

Military Justice makes implicit what is stated explicitly in the ■■■■■ Manual. That is, a general court-martial exists when a quorum of the court and the law officer assemble and are respectively sworn. The swearing of the one designated as law officer without the swearing of the members of the court does not constitute a general court-martial any more than swearing of the court members without the law officer constitutes such. Therefore, at the time of appellant's "plea of guilty," there was no legally convened court-martial.

The question, and the only question, before us is whether a "plea of guilty" entered prior to the lawful convening of the court-martial, and out of the presence of the persons appointed to constitute the court-martial, is sufficient to support a finding of guilty.

From the earliest times, the Anglo-American system of law regarded a plea as an indispensable requisite to any trial of a criminal case. If upon appeal the record failed to reflect that a plea had been entered, reversal was necessary and would result, even though not assigned as error. Crain v United States, 162 US 625, 40 L ed 1097, 16 S Ct 952 (1896). It was also held that while arraignment might be waived, it was impossible to waive the plea. Shelp v United States, 81 Fed 694 (CA 9th Cir) (1897).

We are aware that in Garland v Washington, 232 US 642, 58 L ed 772, 34 S Ct 456 (1914), the Supreme Court sustained a conviction without arraignment where "the accused had taken objections to the second information, and was put to trial before a jury upon that information in all respects as though he had entered a formal plea of not guilty"; and overruled Crain v United States where in conflict. However, we are here dealing with a trial by court-martial under a purported plea of guilty which served to dispense with the production of any evidence and which permitted the law officer to instruct the court, in effect, to return a finding of guilty of all charges and specifications, which he did. Article 45, Uniform Code of Military Justice, 10 USC § 845, expresses the concern of Congress that a guilty plea before a court-martial be not accepted improvidently or through lack of understanding of its meaning and effect; and prohibits a plea of guilty to an offense for which the death penalty may be adjudged. The effects of a plea of guilty cannot be overestimated. It admits all incriminating ■■■■■ facts alleged and the statutory elements of the offense. When such a plea is accepted and entered upon the records it is a conviction of the highest order. See Kercheval v United States, 274 US 220, 71 L ed 1009, 47 S Ct 582 (1927); United States v Lucas, 1 USCMA 19, 1 CMR 19; United States v Palacios, 9 USCMA 621, 26 CMR 401; United States v Cruz, 10 USCMA 458, 28 CMR 24; 4 Wharton, Criminal Law and Procedure, § 1900.

The law has long been concerned that a plea of guilty be not entered involuntarily or through lack of understanding of its effect or the nature of the charge. In our Federal courts the safeguard is expressed in Rule 11 of the Federal Rules of Criminal Procedure,[2] United States Code, Title 18, which provides:

". . . The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge."

Failure to comply with the rule or a perfunctory compliance may result in reversal. Rulovitch v United States, 286 Fed 315 (CA 3d Cir) (1923); United States v Lester, 247 F2d 496 (CA 2d Cir) (1957); Kennedy v United States, 249 F2d 257 (CA 5th Cir) (1957); cf. Kennedy v United States, 259 F2d 883 (CA 5th Cir) (1958).

Similar safeguards exist in the States, and statutes were passed in

---

[2] Although substantially a restatement of existing law and practice, it should be noted that Rule 11 was adopted by the Supreme Court in 1949, long after its decision in Garland v Washington, supra.

early times to provide them. In Texas the statute is an old one and is cited, discussed, and rigidly applied as early as 1881 in Saunders v State, 10 Texas App 336. Indeed, as there noted by the court, safeguards were required without statute, as indicated by its citation of Commonwealth v Battis, 1 Mass 95, and 1 Bishop, A Treatise on Criminal Procedure, 3d ed, § 795, and the following statement:

> "What the Massachusetts court felt constrained to do, in the case cited, independent of a statute to that effect perhaps, our statute requires shall be done in felony cases. What the statute requires should be done in so important a matter as the plea in a felony case should not and cannot be left to inference, intendment or presumption; the facts which constitute the very gist of such a plea when prescribed must be made manifest of record." [Saunders v State, supra, at page 339.]

See 4 Wharton, Criminal Law and Procedure, § 1900, supra.

In a matter of such importance as the entry of a plea of guilty, the military due process provided ▋ by the Uniform Code of Military Justice is not satisfied by some individual—including the law officer—informing the duly constituted court-martial, after it is properly sworn and convened, that the accused had previously entered a plea of guilty. Suffice it to say such procedure is fraught with danger of many abuses. The possible abuses are limited only by the ingenuity of those who seek to practice them.

The submission of a plea of guilty is not merely a ritualistic proceeding. It is a matter of prime importance and substance. It can be entered only before a court legally convened.

That is not to suggest that inquiry into the voluntariness and an accused's understanding of ▋ his guilty plea should also be made in open court-martial session, in the hearing of the members. Such inquiry should, of course, be made by the law officer, and may appropriately be handled in a hearing out of the presence of the court members. See United States v Butler, 9 USCMA 618, 26 CMR 398; United States v Palacios, 9 USCMA 621, 26 CMR 401.

The overriding significance of a plea of guilty itself, however, demands that the same be entered only before a duly constituted and legally convened court-martial. In no other manner can the rights of one accused of crime be adequately protected. Proceeding in open court in public trial, where the accused's family and friends not only may be present, but know they may be present, prevents star chamber proceedings, overreaching of the accused or, equally important, any suspicion thereof. Such is clearly the intent of Rule 11 in the Federal courts; Article 45(a), Uniform Code of Military Justice, supra; and the paragraphs of the Manual heretofore quoted. It is true that failure to follow meticulously all of the directions contained in the provisions mentioned might not constitute error prejudicial to the substantial rights of the accused. However, the importance historically attached to the plea and the overriding importance and result of a plea of guilty, require adherence to those provisions.

Intense effort over scores of years has been expended in protecting the rights of those charged with crime. The plea of guilty has often constituted the instrument of injustice. We have noted some of the procedures devised to prevent that particular vice. The common law, court decisions, rules and statutes, including the Uniform Code of Military Justice, have provided that protection. We are cognizant that no complaint has been made as to the manner in which the "preliminary out-of-court hearing" was conducted in this instance. Nor is there any complaint that the law officer was other than thoroughly impartial. But we are concerned with what might be possible in future cases as well as with what transpired in this case. In speaking of constitutional rights, the Supreme Court said

in Boyd v United States, 116 US 616, 29 L ed 746, 6 S Ct 524 (1886):

". . . It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely: by silent approaches and slight deviations from legal modes of procedure."

There is no provision in military law for "preliminary hearings," "pretrial hearings," nor one-officer general courts-martial. If any of such is to exist it shall be by act of Congress which can at the same time provide the safeguards against abuse which it deems to be adequate.[3]

Government appellate counsel contend that this case presents nothing other than a question of arraignment which was waived, and cite Garland v Washington, supra. Cf. Hamilton v Alabama, 368 US 52, 7 L ed 2d 114, 82 S Ct 157 (1916). We do not agree. The proceedings in that case were before a duly established permanent court of the State and a duly acting judge thereof. This distinction is made clear in McClaughry v Deming, supra:

". . . The particular tribunal is a mere creature of the statute, as we have said, and must be created under its provisions. It is a special body convened for a specific purpose, and when that purpose is accomplished its duties are concluded and the court is dissolved. The officers composing the alleged court were not *de facto* officers thereof, for there was no court, and therefore it could not have *de facto* officers. . . . A court-martial is wholly unlike the case of a permanent court created by constitution or by statute and presided over by one who had some color of au-

thority although not in truth an officer *de jure*, and whose acts as a judge of such court may be valid where the public is concerned." [186 US at page 64.]

We hold that, appellant not having been called upon to plead before a court properly and fully ▮▮▮▮▮▮ ▮ constituted, and legally convened; and no plea of guilty having been entered by or in behalf of the appellant before such court-martial; it follows that the action of the law officer, in informing the court that appellant had previously and before the convening of the court done so, was insufficient to warrant a finding of guilty by the court-martial.

The findings and sentence are void and the decision of the board of review is, therefore, reversed. The record is returned to The Judge Advocate General of the Army.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The principal opinion makes out a good case for the desirability of conducting the trial proceedings in accordance with authorized procedures. I have no dispute with those views. What I disagree with, is the conclusion that "no plea of guilty . . . [was] entered by or in behalf of the appellant before" a duly constituted court-martial.

A court-martial is constituted by appropriate order. Once charges are referred to it for trial, the law officer, the president of the court, and appointed counsel are authorized to act. Defense counsel is empowered to, and indeed must, enter upon his duties as defense counsel. Manual for Courts-Martial, United States, 1951, paragraphs 46 and 121. See also United States v Thornton, 8 USCMA 446, 24

---

[3] In the report to the Committees on Armed Services of the Congress, submitted in accordance with Article 67(g), Uniform Code of Military Justice, 10 USC § 867, The Judge Advocates General have joined in recommending amendments to the Code to accomplish some of these purposes.

Seeking such statutory authority seems an effective admission the same does not now exist. Under such circumstances it seems anomalous that a military service would attempt to exercise such authority while the recommendation is pending before the Congress.

CMR 256. Trial counsel also immediately assumes the responsibilities of his office. See Manual for Courts-Martial, supra, paragraph 44. Before the court is convened for trial of the cause, the president may confer with trial counsel as to the time of convening, and the uniform to be worn. By implication, he may also make recommendations as to the security of the accused. Manual for Courts-Martial, supra, paragraphs 40, 59 and 60. Similarly, the law officer is not a mute and passive bystander until the moment the court convenes for trial of the accused. In United States v Fry, 7 USCMA 682, 686, 23 CMR 146, we indicated he had a legitimate area of action before the case came on to be heard. We observed that he could prepare to meet some of the special problems which might arise at the trial by asking "counsel to inform him of the issues that may be raised"; and he could read and study the charges against the accused. In my opinion, he can also inquire into whether the accused intends to plead guilty. See United States v Hood, 9 USCMA 558, 26 CMR 338. That brings me to the crucial question of whether the accused's acknowledgment of guilt was presented only to the law officer in the pretrial inquiry.

After the convening preliminaries, the law officer announced in open court, before the qualified court members, that the accused had pleaded to the charges and specifications before them, and that he had accepted the plea. The accused and his civilian and military counsel were present; none of them entered an objection. Nor did they object when trial counsel later announced that "in view of the accused's plea of guilty" he had "no evidence to present." Nor did they object, when, at that point, the law officer said: "Defense Counsel, the prosecution has rested in view of the plea of guilty." The only response was by defense counsel, who said: "The defense rests." Finally, neither the accused nor either of his lawyers objected when the law officer instructed the court members that a "plea of guilty standing before the court is a complete confession of guilt of the offenses charged"; and that in "this case the accused has entered a plea of guilty to all charges and specifications. This plea still stands."

An accused's counsel can bind the accused to a formal plea of guilty, although the accused himself remains silent. United States v Denniston, 89 F2d 696 (CA 2d Cir), cert den 301 US 709, 81 L ed 1362, 57 S Ct 943 (1937). The conduct of the defense lawyers in this case clearly indicates they regarded the law officer's announcement of the accused's plea, as if they had themselves made it. Under the circumstances, the plea of guilty was, in my opinion, made a part of the proceedings in open court as completely and effectively as if it had been formally announced by the accused or his lawyers. Cf. United States v Cambridge, 3 USCMA 377, 12 CMR 133.